UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CAROLYN M. INGRAM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 15-CV-0061-CVE-PJC |
| | ) |
| **DR. PAUL COOPER, in his individual** | ) |
| **capacity, and DR. DEBORAH LANDRY, in** | ) |
| **her individual capacity,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss (Dkt. # 8). Defendants argue that they are entitled to qualified immunity from plaintiff's claims under 42 U.S.C. § 1983, because there are no allegations that defendants personally participated in the alleged constitutional violation and the law supporting plaintiff's claims was not clearly established. Plaintiff responds that she has adequately alleged that defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution and that her rights were clearly established when the acts occurred. Dkt. # 11.

### I.

Carolyn Ingram states that she attended Northeastern State University (NSU) in 2012 and 2013, and she was a non-degree seeking student taking classes needed to obtain a counseling license. Dkt. # 1, at 3. NSU is a public university. Id. She alleges that she met with employees of NSU to develop a plan that would allow her to meet the requirements of the State of Oklahoma for her counseling license, and NSU represented that Ingram would need to take three classes for NSU to

sign off on her certification paperwork.[1]  Id.  NSU advised Ingram that she would need to complete a Practicum II or an Internship course, but she would not have to take both of those courses.  Id. at 4.  Ingram paid to take the three courses that NSU represented would be necessary for Ingram to obtain a counseling license from the State of Oklahoma.  Id.

Ingram began taking classes in 2012, and she began her final class in the Fall of 2012.  The final class was a Group Process course taught by Paul Cooper, Ph.D., and she was required to write a paper as part of the course curriculum.  Id.  She scheduled meetings with Dr. Cooper to discuss her paper, but she claims that Dr. Cooper cancelled or missed the meetings.  Id.  She also claims that her Group Process paper received a B and she sought permission from Dr. Cooper to revise her paper, but Dr. Cooper refused to allow her to revise her paper.  Id.  Ingram found Dr. Cooper's actions "inexplicable" and she wanted to get an A on her paper to end her involvement with NSU on a high note, and she scheduled an appointment with Deborah Landry, Ph.D., to discuss Dr. Cooper's refusal to allow her to revise her paper.  Id.  Ingram alleges that "for all relevant purposes" Dr. Landry was in charge of the psychology department and that Dr. Cooper reported to Dr. Landry.  Id. at 6.  Dr. Landry met with Ingram and heard her complaint that she was not permitted to revise her paper, but she claims that nothing changed after the meeting.  Id.  Ingram claims that Dr. Landry informed Dr. Cooper about her meeting with Ingram and that Dr. Cooper "expressed his dissatisfaction to [Ingram]."  Id.  Based on the allegations of the complaint, it appears that these meetings took place in November and December 2012.  In February 2013, Ingram presented her state licensing paperwork to Dr. Cooper, but she claims that Dr. Cooper refused to sign the

---

[1]  Plaintiff does not allege that defendants took part in the meetings to come up with a course plan that would meet the state licensing requirements.

2

paperwork in retaliation for Ingram's meeting with Dr. Landry. Id. Ingram asked Dr. Cooper to reconsider his decision, but Dr. Cooper refused to sign Ingram's state licensing paperwork. Id.

Ingram complained to Dr. Landry about Dr. Cooper's refusal to sign the paperwork, and Dr. Landry agreed that she would sign Ingram's paperwork if Ingram could provide written documentation that she had completed the necessary coursework. Id. at 7. Ingram claims that she provided the requested paperwork to Dr. Landry, but Dr. Landry refused to sign the state licensing paperwork. Id. Ingram believes that Dr. Landry and Dr. Cooper were acting in retaliation for her "protected activity." Id. Dr. Landry told Ingram that she needed to take an Internship course to complete state licensing requirements, but Ingram believed that taking an Internship course would effectively nullify her agreement with NSA and that she would have to repeat the entire program. Id. at 8. Ingram complained to NSU and requested a formal hearing, but she claims that NSU set Ingram's complaint for an informal hearing in violation of NSU policy. Ingram was not required to start over with her program, but she did have to take an Internship course before NSU would sign her state licensing paperwork in August 2013. Id. Ingram states that the delay in obtaining her state certification caused her to lose a counseling job that would have paid her $50 per hour. She was eventually able to obtain similar employment but at a lower hourly rate of pay. Id. at 9.

On February 5, 2015, Ingram filed this case alleging claims under § 1983. In her first claim for relief, Ingram alleges that Dr. Cooper and Dr. Landry retaliated against her for exercising her right of free speech under the First Amendment. Ingram alleges in her second claim for relief that Dr. Cooper and Dr. Landry violated her rights under the Fourteenth Amendment by discriminating against her based on her race, gender, and age.

3

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

**A.**

Defendants argue that plaintiff's claims should be dismissed, because plaintiff did not file this case within the applicable statute of limitations. Dkt. # 8, at 4-5. Plaintiff responds that Dr. Cooper refused to sign her state licensing paperwork in February 2013 and Dr. Landry made a similar refusal in March 2013, and she argues that her claims were filed within two years of the events giving rise to her claims. Dkt. #11, at 6-7.

There is no federal statute of limitations for a plaintiff to bring a § 1983 claim but, instead, a federal district must borrow the state statute of limitations for an analogous cause of action under state law. Wilson v. Garcia, 471 U.S. 261, 271 (1985). The Tenth Circuit has determined that the Oklahoma statute of limitations for personal injury actions is applicable, and Oklahoma provides a two year statute of limitations for such claims. Meade v. Grubbs, 841 F.2d 1512, 1522-24 (10th Cir. 1988). Plaintiff does not dispute that a two year statute of limitations is applicable to her § 1983 claims. Dkt. # 11, at 6. However, the parties dispute whether any act that would qualify as a clearly established violation of plaintiff's constitutional rights occurred within the statute of limitations.

Defendants argue that plaintiff failed to file this case within two years of any act that could possibly qualify as a clearly established violation of plaintiff's constitutional rights, and they also argue that many of the acts cited by plaintiff occurred entirely outside of the statute of limitations. Dkt. # 12, at 1-2. Plaintiff responds that she met with defendants in February and March 2013, and she claims that she was subsequently retaliated against for complaining about Dr. Cooper's refusal

to sign her state licensing paperwork.[2] Dkt. # 11, at 7. The Court has reviewed the complaint and it is clear that certain events occurred outside of the applicable statute of limitations. Plaintiff claims that, in the Fall of 2012, she requested permission from Dr. Cooper to revise her Group Process paper. Dkt. # 1, at 5. He denied plaintiff's request and he also missed or cancelled meetings with plaintiff. Plaintiff claims that she met with Dr. Landry near the end of 2012 about Dr. Cooper's refusal to allow her to revise her Group Process paper, but plaintiff was still not permitted to revise her paper. These acts clearly occurred outside the two-year statute of limitations and plaintiff cannot rely on these events as an independent basis to bring § 1983 claims against defendants. However, this is not the end of plaintiff's allegations and she claims that she met with Dr. Cooper in February 2013 to ask him to sign her state licensing paperwork. Dkt. # 1, at 6. Plaintiff claims that Dr. Cooper refused to sign the paperwork in retaliation for making a complaint about his refusal to allow her to revise her Group Process paper, and she claims that beginning in March 2013 that Dr. Cooper and Dr. Landry colluded against plaintiff by continuing to refuse the state licensing paperwork and advising plaintiff that she would have to take an Internship course to complete her state licensing requirements. Id. at 7. These acts appear to have occurred after February 5, 2013 and plaintiff has alleged that some acts giving rise to her § 1983 First Amendment claim occurred within the statute of limitations. The Court finds that plaintiff's § 1983 claims should not be dismissed based on the statute of limitations, because plaintiff has alleged that certain acts of retaliation occurred after

---

[2]  Defendants point out that in plaintiff's response (Dkt. # 11) she claims to have met with defendants in February and March 2015, rather than 2013. Dkt. # 12, at 1 n.1. This appears to be a typographical error in her response, and the Court will rely on the allegations of the complaint to establish a timeline of events.

February 5, 2013. However, the scope of plaintiff's claims is limited to the extent that she cannot rely on any complaints made before February 5, 2013 as an independent basis for recovery.

**B.**

Defendants argue that they are entitled to qualified immunity as to plaintiff's equal protection claim under the Fourteenth Amendment, because plaintiff's allegation that she belongs to a protected class is not sufficient to state a claim that she was treated differently because of her race or any other status. Dkt. # 8, at 13. Plaintiff responds that she has alleged that she was treated less favorably than other students due to her race, gender, and age, and she asserts that she has adequately alleged a claim for a violation of her right to equal protection of the law under the Fourteenth Amendment. Dkt. # 11, at 21-22.

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007) The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to

qualified immunity. A plaintiff must allege that the defendant's actions violated a specific constitutional right and, if the plaintiff has alleged a constitutional violation, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Plaintiff bears the burden to prove that her constitutional rights were violated and that the law giving rise to her claims was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. "The [Equal Protection] Clause 'creates no substantive rights. Instead, it embodies a general rule that States must treat cases alike but may treat unlike cases accordingly." Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007). Allegations of discrimination based on a person's race or national origin can be sufficient to state a claim under § 1983, and claims of racial discrimination are subject to strict scrutiny. City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432 (1985); Ramirez v. Dep't of Corrections,, 222 F.3d 1238, 1243 (10th Cir. 2000). Gender is also a protected class under the Fourteenth Amendment, and claims of gender discrimination are subject to intermediate scrutiny. Mississippi University for Women v. Hogan, 458 U.S. 718 (1982). However, classifications based on age are not subject to any heightened scrutiny under the Fourteenth Amendment. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 84-85 (2000). To establish a violation of the Equal Protection Clause, a plaintiff must allege that a defendant acted with the intent to discriminate against the plaintiff because of the plaintiff's protected status. See Washington

v. Davis, 426 U.S. 229, 241 (1976). The specific facts alleged by the plaintiff must be "at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). If the plaintiff has adequately alleged that act of intentional discrimination occurred, the Court must determine what level of scrutiny applies to the classification and if the difference in treatment can be justified by "some upright government purpose." SECSYS, LLC v. Vigil, 666 F.3d 678, 687 (10th Cir. 2012). For the purpose of qualified immunity, it is clearly established that discrimination against a person because of his or her race would be a clearly established violation of the person's constitutional rights. Bogle v. McClure, 332 F.3d 1347, 1355 (11th Cir. 2003).

Plaintiff argues that she has adequately alleged that she was treated differently because she engaged in "protected activity," and she asserts that she has stated an equal protection claim under the Fourteenth Amendment. However, it is not clear that she has alleged that she engaged in any protected activity based on her race, gender, age, or any other classification, and the focus of her complaint is that she was treated differently because she engaged in disfavored speech. Plaintiff claims that Dr. Cooper did not allow her to revise her paper and that she complained to Dr. Landry about Dr. Cooper's conduct. Dkt. # 11, at 21. This argument is unsuccessful for two reasons. First, the complaint alleges that plaintiff met with Dr. Landry before December 2012, and this would be outside the applicable statute of limitations. Dkt. # 1, at 6. Second, the alleged "protected activity" was premised on her exercising her right of free speech, and she does not allege that she made a complaint of discrimination based on her race, gender, or age. Plaintiff refers to a subsequent meeting with Dr. Landry in which Dr. Landry allegedly ratified Dr. Cooper's refusal to sign plaintiff's state licensing paperwork, but the retaliation by Dr. Cooper was again for plaintiff's

exercise of her right to free speech. Id. at 7. Plaintiff does make a general allegation that "similarly situated non-protected" students at NSU were treated differently, but she fails to specifically allege that any difference in treatment was the result of intentional racial, gender, or age discrimination. Id. at 13. It would be a clearly established violation of plaintiff's constitutional rights if plaintiff had been discriminated against on the basis of her race, but she has failed to allege that defendants intended to discriminate against her because of her protected status when they allegedly failed to sign plaintiff's state licensing paperwork. A plaintiff cannot establish an equal protection violation by simply alleging that the plaintiff belonged in a certain class and that defendants' actions adversely affected her, and the law is clear that any difference in treatment must be intentional. See Personnel Admin. of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) ("[Discriminatory purpose] implies that the decisionmaker . . . selected or affirmed a particular course of action at least in party 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."). Plaintiff has not adequately alleged an essential element of an equal protection claim under the Fourteenth Amendment, and defendants are entitled to qualified immunity as to plaintiff's equal protection claim (second claim for relief).

## C.

Defendants argue that they did not personally participate in the alleged violation of plaintiff's First Amendment rights, because plaintiff has not alleged that they participated in the creation of plaintiff's course plan when she enrolled at NSU. Dkt. # 8, at 11. They also argue that the law is not clearly established if the speech giving rise to plaintiff's First Amendment claim must touch on a matter of public concern. Dkt. # 12, at 4. Plaintiff responds that defendants refused to sign her state licensing paperwork in retaliation for complaining about Dr. Cooper's denial of plaintiff's

10

request to revise her Group Process paper, and she argues that this qualifies as a clearly established violation of her First Amendment right to free speech.

To state a first amendment retaliation claim outside of the employment context, a plaintiff must allege "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected activity." Leverington v. City of Colorado Springs, 643 F.3d 719, 729 (10th Cir. 2011). A private citizen engages in protected activity "anytime he or she petitions the government for redress," and it is not required that the speech relate to a matter of public concern. Van Deelen v. Johnson, 497 F.3d 1151, 1156 (10th Cir. 2007). This rule applies whether a citizen is petitioning a government actor or exercising his or her right to free speech. Klen v. City of Loveland, Colorado, 661 F.3d 498, 509 (10th Cir. 2011). In the context of qualified immunity, courts have focused on the retaliatory intent of the state actor and have found a constitutional violation if the state actor knew or should have known that the plaintiff had a right to criticize public officials. Bloch v. Ribar, 156 F.3d 673, 683 (6th Cir. 1998).

Defendants make two separate arguments as to why plaintiff's speech should not be considered protected activity for a First Amendment retaliation claim. They argue that the speech at issue concerned academic matters and that federal courts have generally deferred to "academic decisions." Dkt. # 8 at 10. They also assert that plaintiff's speech did not relate to a matter of public concern, and they claim that the law is unclear if the public concern requirement applies in the "government/student" context. Dkt. # 12, at 4. As to the first argument, the Court has already

11

determined that plaintiff's complaints about Dr. Cooper's refusal to allow her to amend her Group Process paper are time-barred, but plaintiff may proceed under a theory that Dr. Cooper's and/or Dr. Landry's refusal to sign her state licensing paperwork was retaliation for plaintiff's protected speech activity. The Court may consider only the allegations of the complaint at this stage of the case, and there is nothing in the complaint suggesting that it was an academic decision as to whether she had completed the requirements for her state counseling license. Dkt. # 1, at 7. Defendants may re-urge this specific argument in a motion for summary judgment if they intend to argue that their refusal in February and March 2013 to sign plaintiff's paperwork was an academic decision, but there is nothing in the complaint that would allow this Court to infer that this was an academic decision entitled to deference.

Defendants argue that the law is clearly established that protected activity in a govenment/student case must comply with the public concern requirement. Dkt. # 12, at 4. In Taylor v. Barkes, 135 S. Ct. 2042 (2015), the Supreme Court explained that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. at 2044. The Tenth Circuit has stated that a plaintiff has the burden to establish that the state of the law is clearly established by "identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains.'" Cox v. Glanz, 800 F.3d 1231, 1247 (10th Cir. 2015).

The Court finds that the law is clearly established that the public concern requirement for speech applies only in the context of government employment, and a private citizen alleging a claim of First Amendment retaliation is not required to show that the speech for which she was retaliated

12

against was a matter of public concern. Defendants argue that the Supreme Court ruled in <u>Connick v. Myers</u>, 461 U.S. 138 (1983), that speech must be a matter of public concern to support a First Amendment retaliation claim. Dkt. # 12, at 7. <u>Connick</u> was decided in the context of public employment, not a university/student context, but defendants are correct that <u>Connick</u> recognized that speech on matters of public concern was protected activity even for government employees. <u>Connick</u>, 461 U.S. at 144-45. In <u>Van Deelen</u>, the Tenth Circuit cited <u>Connick</u> to highlight why limits on speech in the public workplace must be balanced against a worker's right to free speech, but the Tenth Circuit expressly found that the public concern requirement did not apply outside of the public employment context. <u>Van Deelen</u>, 497 F.3d at 1156-67. <u>Van Deelen</u> was decided in 2007 and it is a published case, and it clearly gives notice that protected activity for a First Amendment retaliation claim brought by a private citizen does not need to relate to a matter of public concern. In a subsequent unpublished case, the Tenth Circuit has recognized that the "speech of a private citizen generally enjoys broader protections than the speech of public employees or public contractors." <u>Glover v. Mabrey</u>, 384 F. App'x. 763 (10th Cir. June 28, 2010).[3] The Tenth Circuit in <u>Klen</u> expressly stated that the district court committed a legal error by requiring private citizens to show that their speech complied with the public concern test, and the Tenth Circuit reversed a finding of qualified immunity as to the plaintiffs' First Amendment retaliation claim because of this error. <u>Klen</u>, 661 F.3d at 508.

Based on the foregoing, the Court finds that plaintiff has adequately alleged that defendants committed a constitutional violation and that the constitutional right was clearly established when

---

[3]   Unpublished decisions are not precedential, but may be cited for their persuasive value. <u>See</u> Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

the alleged violation occurred. Plaintiff alleges that Dr. Cooper refused to sign her state licensing paperwork in retaliation for her making a complaint to Dr. Landry about the revision of her Group Process paper. Dkt. # 1, at 6. She claims that she complained to Dr. Landry about Dr. Cooper's conduct, and Dr. Landry would not sign the paperwork or require Dr. Cooper to sign the paperwork. Id. at 7. Plaintiff alleges that Dr. Landry retaliated against her for complaining about Dr. Cooper by refusing to sign the paperwork and requiring plaintiff to take an additional course. Id. Based on the complaint alone, plaintiff has adequately alleged that she engaged in protected activity. Defendants have not made any argument as to the second element of a retaliation claim, and the Court will assume that this element is satisfied. Finally, plaintiff has alleged that defendant's actions were motivated by a desire to retaliate against her for engaging in protected activity. The law is clearly established that retaliation against a private citizen for engaging in protected speech is prohibited under the First Amendment, even if the speech is not about a matter of public concern, and defendants are not entitled to qualified immunity on plaintiff's First Amendment retaliation claim (first claim for relief).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 8) is **granted in part** and **denied in part**: defendants are entitled to qualified on plaintiff's § 1983 claim alleging a violation of the Fourteenth Amendment (second claim for relief); defendant's request for qualified immunity as to plaintiff's § 1983 claim alleging a violation of plaintiff's First Amendment right to free speech (first claim for relief) is denied.

**IT IS FURTHER ORDERED** that the first claim for relief is limited to alleged acts of retaliation occurring after February 5, 2013.

**IT IS FURTHER ORDERED** that defendants shall file their answer(s) to the complaint (Dkt. # 1) no later than **March 3, 2016.**

**DATED** this 18th day of February, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE